UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
ROBIN YOUNGER,                 :
                               :
            Plaintiff,         :
                               :
v.                             :   Civil No. 12cv1814 (AWT)
                               :
SHANTE HANKS,                  :
ELIZABETH GOTTLIEB, and        :
DWOUN BYRD,                    :
                               :
            Defendants.        :
------------------------------x
```

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The pro se plaintiff brings this 42 U.S.C. § 1983 action against the sole remaining defendant, Shante Hanks ("Hanks"), claiming that Hanks improperly allowed Iris Santiago ("Santiago") to terminate the plaintiff from the Section 8 Housing Choice Voucher Program ("Section 8 Program") administered by the Bridgeport Housing Authority ("BHA") because of the plaintiff's race and status as a grandparent.[1]  Hanks is being sued in her individual capacity.

The defendant has moved for summary judgment, and in the plaintiff's amended opposition to the defendant's motion for summary judgment, the plaintiff moves for summary judgment on her claims against Hanks.  (See Plaintiff's Opposition ("Pl.'s Opp."), Doc. No. 52, at 4.)  For the reasons set forth below,

---

[1] On June 5, 2013, the court granted the plaintiff's motion to withdraw her claims against defendants Elizabeth Gottlieb and Dwoun Byrd.  (See Doc. No. 31.)

the defendant's motion is being granted and the <u>pro</u> <u>se</u>
plaintiff's motion for summary judgment is being denied.

I.   **Factual Background**

Hanks is a Commissioner on the BHA Board of Commissioners,
and was the Chairperson of the Board in 2012.  In 2012, Santiago
was the Director of the Section 8 Program at BHA.  Eligibility
for participation in the program is based on income and family
composition, and continued eligibility is reviewed on an annual
basis.  Participants are required to comply with certain
obligations as set forth by HUD regulations, including providing
information that is necessary for a public housing authority to
verify family composition.  If a participant meets the
guidelines of the Section 8 Program, she will receive a voucher
that indicates the number of bedrooms for which her family is
eligible.

From 2008 to December 2012, the plaintiff was a participant
in the Section 8 Program.  During that time, she resided in a
three-bedroom apartment at 86 Magnolia Street in Bridgeport.
The plaintiff received vouchers for a three-bedroom apartment
based on information she supplied, i.e., that her family
composition included two grandchildren.  During an annual
recertification, in a November 9, 2011 Second & Final Notice,
the BHA reminded the plaintiff that she needed to submit
documents to confirm her income and family composition.

Subsequently, the plaintiff listed her two grandchildren as members of her family on an Application for Admission and Continued Occupancy, and the BHA sought additional documents to verify the plaintiff's family composition.  On January 31, 2012, the BHA sent the plaintiff a notice of its intent to terminate her participation in the Section 8 Program as a result of her failure to provide, inter alia, documents that substantiated her claim that her family composition included two grandchildren. The notice informed the plaintiff that she had 10 days to request an informal hearing.

On March 6, 2012, the BHA held an informal hearing.  At that hearing, the plaintiff informed the BHA that in 2010 a third grandchild had come to live with her.  The plaintiff was represented by counsel at the hearing.  During the hearing it was decided that the BHA would reach out to the grandchildren's schools to obtain documents verifying whether the plaintiff had custody of her grandchildren.  On March 7, 2012, the BHA sought verification from the schools.  However, for two of the grandchildren, their school informed the BHA that the plaintiff was not listed as a current guardian; for the third grandchild, the school informed the BHA that the minor did not reside at 86 Magnolia Street and that the plaintiff was not listed in the school's records.  The BHA determined, inter alia, that because the plaintiff had not been able to provide proof that her

grandchildren had resided with her since 2008, the plaintiff had been overpaid on the "dependency allowance" and "rental subsidy"; that instead of a voucher for a three-bedroom unit, the plaintiff was entitled to a voucher for a one-bedroom unit; and that the plaintiff had to repay the BHA the overpaid amount. The BHA notified the plaintiff of its conclusions and a proposed repayment agreement in a March 22, 2012 letter, entitled Housing Authority of the City of Bridgeport Summary of Informal Hearing Conference.  The letter also informed the plaintiff that she had a right to a formal hearing.[2]

On June 19, 2012, a formal hearing was held, and Nicholas Calace ("Calace"), the then-Executive Director of the BHA, was the hearing officer.  The main issue addressed at the formal hearing was whether the plaintiff could substantiate her claim that her grandchildren lived with her from 2008 to 2012.  During the hearing, Santiago informed Calace that while the plaintiff had claimed that she had custody of her grandchildren, the grandchildren's schools informed the BHA that the plaintiff was not listed as a legal guardian in school records so the schools could not release any information to the BHA.  Santiago also provided a form from the grandchildren's doctor, which did not

---

[2] The March 22, 2012 summary of the informal hearing also states that during the hearing, Santiago asked the plaintiff why she had accused Santiago of being a racist when the plaintiff had never met or spoken to Santiago.  The summary states that the plaintiff explained "that was what she heard from other people."  (Defendant's Memorandum of Law ("Def.'s Mem."), Doc. No. 45-2, Ex. G, at 3.)

list the plaintiff's name and address.  However, in the version
of the form submitted by the plaintiff, her name and address
were listed.  Santiago stated that the information provided by
the plaintiff was inaccurate, that she was not entitled to a
three-bedroom apartment, and that the plaintiff had been over-
subsidized by over $21,720 as of March 2012

The plaintiff's counsel represented that the plaintiff had
filed for legal custody of her grandchildren but their parents
were never around to go to court.  While the plaintiff claimed
that the grandchildren used her address for school, Calace noted
that school documents only recognized the grandchildren's mother
and listed the mother as the emergency contact.

Calace concluded that it was a peculiar situation, that he
would consult with his coordinator at HUD about the definition
of the term "custody," that the grandchildren's mother needed to
correct the records for the grandchildren's benefit, that the
plaintiff's file needed to be corrected, that the issue of the
plaintiff's family composition warranted further research, and
that no determination would be made that day.  Calace also noted
that he would have accepted information from the grandchildren's
schools if it substantiated the plaintiff's claim of family
composition.

The plaintiff was provided with a letter dated July 5, 2012 and entitled Formal Hearing Determination.  The letter informed the plaintiff that she had 10 business days to provide:

- A release form from the schools, doctor and dentist of [the plaintiff's] grandchildren, so that [the BHA] can verify who they recognized as the grandchildren's guardian and their place of residence for the years 2008 until [2012].

- Copies of the signed and dated tax returns . . . for the parents of the children from 2008 to 2011 to establish who claimed the children as dependents.

(Def.'s Mem., Doc. No. 45-2, Exhibit H, at 6.)  The letter also informed the plaintiff that she would be terminated from the Section 8 Program unless she entered into a repayment agreement for the overpaid amount of $21,720.

In a letter dated July 24, 2012, Calace informed the plaintiff that while she had provided some documents to the BHA, she had not submitted documents showing that she had had custody of her grandchildren going back to 2008.  If the plaintiff did not enter into the repayment agreement by August 1, 2012, her participation in the Section 8 Program would be terminated effective August 31, 2012.  Subsequently, the plaintiff's participation was terminated because she never provided the requested documents nor entered into the repayment agreement.

## II.   <u>Legal Standard</u>

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact

to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  Only those facts

that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  See <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000)(quoting <u>Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir. 1990)).  However, the inferences drawn in favor of the nonmovant must be supported by evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  <u>Stern v. Trustees of Columbia University</u>, 131 F.3d 305, 315 (2d Cir. 1997) (quoting <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  <u>Anderson</u>, 477 U.S. at 252.

## III.  <u>Discussion</u>

### A.  *Section 1983*

Section 1983 of Title 42 of the United States Code states, in pertinent part, that "[e]very person who, under color of any

statute, ordinance, regulation, custom, or usage, of any
State . . . subjects, or causes to be subjected, any citizen of
the United States . . . to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at
law . . . ."  42 U.S.C. § 1983.

        "A plaintiff asserting a § 1983 claim against a supervisory
official in h[er] individual capacity must allege that the
supervisor was personally involved in the alleged constitutional
deprivation." Barnes v. Henderson, 490 F. Supp. 2d 313, 318
(W.D.N.Y. 2007) (citing Johnson v. Newburgh Enlarged Sch. Dist.,
239 F.3d 246, 254 (2d Cir. 2001)).

> Personal involvement may be shown by evidence that: (1)
> the defendant participated directly in the alleged
> constitutional violation; (2) the defendant, after
> being informed of the violation through a report or
> appeal, failed to remedy the wrong; (3) the defendant
> created a policy or custom under which
> unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom; (4) the
> defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts; or (5)
> the defendant exhibited deliberate[] indifference to
> others' rights by failing to act on information
> indicat[ing] that constitutional acts were occurring.

Id. at 318-19 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d
Cir. 1995); Williams v. Smith, 781 F2d 319, 323-24 (2d Cir.
1986)).

        Here, there is not sufficient evidence in the record that
could show that Hanks had personal involvement in the

termination of the plaintiff's participation in the Section 8
Program.  First, the plaintiff testified that Hanks "had no
individual role in the determination process as to [her]
voucher." (Def.'s Mem., Doc. No. 45-2, Ex. C, 133:15-18.)  In
addition, the defendant was not present at the informal hearing
or at the formal hearing.  The hearing officer at the formal
hearing was Calace, and he also sent the July 24, 2012 letter to
the plaintiff informing her that she would be terminated from
the program unless she entered into the repayment agreement.
Nothing in the record suggests that Calace informed Hanks of his
decision or that he consulted with Hanks.

     As evidence that Hanks had personal involvement, the
plaintiff proffers a webpage from HUD stating that a board of
commissioners is responsible for securing the management of a
public housing authority.  However, being responsible for
managing a public housing authority is not evidence of personal
involvement in terminating the plaintiff from the Section 8
Program.  The plaintiff also has proffered a document from the
Linn-Benton Housing Authority concerning responsibilities of a
housing authority commissioner.  The document lists one of the
functions performed by the board of commissioners for the Linn-
Benton Housing Authority as "[m]ay respond to difficult and
sensitive employee, client or citizen complaints.  May be
requested to review Authority staff decisions on such matters."

(Pl.'s Opp., Doc. No. 52, Ex. D, at 2.)  This document does not create a genuine issue of material fact as to whether Hanks had personal involvement because the BHA is governed by its own by-laws, and reviewing staff decisions on legal matters is not a function performed by the chair of the commission.  Rather, under the by-laws, the chair has "general supervision over the business and affairs of the [BHA] . . . ."  (Def.'s Mem., Doc. No. 45-2, Ex. N, at 6.)

Second, the plaintiff has not proffered any evidence, only mere allegations, that could show that she informed Hanks that she had been wrongfully terminated from the Section 8 Voucher Program on the basis of race and status as a grandparent. Correspondence between the plaintiff and Hanks shows that the plaintiff claimed that Santiago was attempting to terminate her from the Section 8 Program and that Santiago cancelled the plaintiff's formal hearing, but Hanks's response shows that she had looked into the matter and was informed that a hearing had been scheduled through the plaintiff's counsel.  In addition, the correspondence shows that the plaintiff was aware that Hanks "d[id] not get in the middle of a matter with the BHA . . . ." (Pl.'s Opp., Doc. No. 52, Ex. E, Email on May 19, 2012 at 1:24 PM.)

Third, the plaintiff has not proffered any evidence that could suggest that Hanks, as opposed to the BHA, created any

policy or custom that violated the plaintiff's constitutional rights or allowed the continuance of such a policy or custom. The record shows that under the Housing Choice Voucher Program Administrative Plan, the plaintiff was required to supply information requested by the BHA for use in a reexamination of family income and composition.  In addition, the July 5, 2012 Formal Hearing Determination letter states that "[t]he legality of the family composition for children is either custody or pursuit of custody. . . . .  Every housing authority is required to take [HUD] regulations and create an administrative plan for the Board for approval.  The individual housing authorities determine the language on how detailed its Board wants it be identified." (Def.'s Mem., Doc. No. 45-2, Ex. H, at 4.)  The letter also shows that Calace was tasked with interpreting the definition of the term "custody" and that he would have accepted documents from the grandchildren's schools showing that the schools recognized the plaintiff as being a guardian of her grandchildren to "substantiate . . . the residency of the children."  (Id. at 5.)

Fourth, the plaintiff has not proffered any evidence, only mere allegations, that could show that Hanks was grossly negligent.  Correspondence between the plaintiff and Hanks shows that while Hanks had no involvement in the process of determining the plaintiff's family composition, Hanks, in her

capacity as a Constituent Services Representative for
Congressman Jim Himes, had assisted the plaintiff in scheduling
a hearing with the BHA.

Finally, nothing in the record could show that Hanks
exhibited deliberate indifference to the plaintiff's claim of
constitutional violations or that the plaintiff had informed
Hanks that she was being discriminated against because of her
race or her status as a grandparent.  At most, the record shows
that the plaintiff contacted Hanks for assistance in scheduling
a hearing regarding the plaintiff's continuing eligibility for
the Section 8 Program, that Hanks looked into the situation and
was informed that a hearing had been scheduled through the
plaintiff's counsel, and that Hanks informed the plaintiff that
her understanding was that the hearing had taken place and the
plaintiff was "unable to produce school documentation verifying
[the plaintiff's] residence as the primary residence for [her]
grandchildren . . . [and the] BHA [had given the plaintiff] 10
additional business days to submit these missing documents."
(Pl.'s Opp., Doc. No. 52, Ex. E, Email on March 12, 2012 at 2:28
PM.)

   **B.   *Racial Discrimination***

The plaintiff has not proffered any evidence that could
show that her termination from the Section 8 Program was
racially motivated.  Hanks, like the plaintiff, is African-

American.  The court notes that "a well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class."  Drummond v. IPC Intern., Inc., 400 F. Supp. 2d 521, 532 (E.D.N.Y 2005).  In addition, the March 22, 2012 letter summary of the informal hearing and the July 5, 2012 Formal Hearing Determination letter contain nothing that could show that the plaintiff's termination was motivated by race.  To the contrary, the record shows that the plaintiff said during the informal hearing that she had accused Santiago of being a racist based on what the plaintiff heard from other people.

      **C.**   ***Familial Status***

      With respect to the plaintiff's claim that she was wrongfully terminated from the Section 8 Program because the BHA required proof of legal custody, the record shows that in e-mail correspondence between the plaintiff and HUD, the plaintiff was informed that while the Section 8 Program "does not have a policy that requires a family to have legal custody or show documentation that the family has legal custody," there may be situations where a public housing authority "may request such documentation in order to resolve a dispute about the composition of the family/household."  (Def.'s Mem., Doc. No. 45-2, Ex. I, Sept. 17, 2012 at 11:58 AM.)  The July 5, 2012 Formal Hearing Determination letter shows that discrepancies

existed with respect to the documents the plaintiff submitted to substantiate her claim that her grandchildren lived with her from 2008 to 2012.  Calace informed the plaintiff that "the paperwork is sloppy and misleading" and that "[w]hen records are suspect, it causes further investigation.  This is an obligation that [the BHA] has."  (Id., Ex. H, at 6.)  Moreover, the plaintiff's counsel represented to Calace during the formal hearing that the plaintiff had filed for legal custody of her grandchildren but their parents had failed to go to court to complete the process.  The plaintiff has proffered no evidence that could show that the BHA or Hanks discriminated against her because she was a grandparent by requiring documents to substantiate her family composition from 2008 to 2012.

### D.    *Substantive and Procedural Due Process*

The plaintiff has proffered no evidence that could show that Hanks violated her substantive or procedural due process rights.  Instead, the record shows that the BHA sent her at least five letters informing her that she could be terminated from the Section 8 Program either because she had failed to provide documents substantiating her family composition or because she had failed to enter into the repayment agreement.  In addition, it is undisputed that the plaintiff requested an informal hearing and a formal hearing, both hearings were held, and she was represented by counsel at both hearings.

15

**IV.   <u>Conclusion</u>**

      Accordingly, Defendant's Motion for Summary Judgment (Doc. No. 45) is hereby GRANTED, and judgment shall enter in favor of defendant Shante Hanks with respect to the claims against her. In addition, the plaintiff's motion for summary judgment (Doc. No. 52) is hereby DENIED.

      The Clerk shall close this case.

      It is so ordered.

      Signed this 10th day of February 2015, at Hartford, Connecticut.


                               /s/
                        Alvin W. Thompson
                United States District Judge